# UNITED STATES *v.* CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 11.   Argued April 26, 27, 1910.—Decided October 17, 1910.

The grant made by the act of May 12, 1864, c. 84, 13 Stat. 72, was one *in præsenti*.

Where a railway land grant is one *in præsenti* the beneficiary is entitled to all the lands granted within place limits which had not been appropriated or reserved by the United States for any purpose, or to which a homestead or preëmption right had not attached, prior to the definite location of the road proposed to be aided.

A claim by a State that it is entitled to lands as swamp or overflowed under the Swamp Land Act of September 28, 1850, c. 84, 9 Stat. 519, is not an appropriation or reservation if the land is not in fact swamp or overflowed and the claim sustained by a decision or ruling to that effect of competent authority.

Under the Swamp Land Act power to identify lands as swamp or overflowed within the meaning of the act is conferred solely on the Secretary of the Interior. *French* v. *Fyan*, 93 U. S. 169.

A decision of the Commissioner of the Land Office, on notice to all parties and after hearing, that lands claimed as swamp or overflowed under the Swamp Land Act of 1850, are not swamp or overflowed, or of a character embraced by the act, and which has never been appealed from, modified or reversed, but has been relied on by purchasers for value and in good faith, should not, after a lapse of twenty-five years, be disturbed by the courts where it does not appear that the lands were actually swamp or overflowed, when the decision was made.

160 Fed. Rep. 818, affirmed.

THE facts are stated in the opinion.

*Mr. Barton Corneau,* special assistant to the Attorney-General, for the United States.

*Mr. Charles E. Vroman* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

By an act approved March 3, 1887, c. 376, 24 Stat. 556, (amended by act of March 2, 1896, c. 18, and by act of March 2, 1896, c. 39, 29 Stat. 6, 42), Congress provided for the adjustment of land grants theretofore made in aid of the construction of railroads and for the forfeiture of unearned lands, and for the relinquishment or reconveyance to the United States of lands which had been certified or patented to or for the use of any railroad company.

If upon completing such adjustment it appeared that from any cause lands had been erroneously certified or patented by the United States, to or for the use of a railroad company, by, through or under grant from the United States, to aid in the construction of a railroad, then it became the duty of the Secretary of the Interior to demand the relinquishment or reconveyance of such lands to the United States, whether within granted or indemnity limits; and if such demand was not complied with by a named time, then the Attorney-General was to institute the necessary proceedings to cancel all patents, certificates or other evidence of title issued for such lands, and to restore the title to the United States. Provision was made for the protection, by patents, of purchasers in good faith from the grantee company, and the Secretary of the Interior was required to demand, on behalf of the United States, "payment from the company which has so disposed of such lands of an amount equal to the Government price for similar lands;" and if payment was refused, within a time named, "the Attorney-General was to institute suits against the company for such amount." 24 Stat. 556; 29 Stat. 6, 42.

Under the authority of that act the present suit was brought by the United States in 1903. It relates to about

4,300 acres of lands in Kossuth, Palo Alto and Dickinson Counties, Iowa, which, the United States alleges, were erroneously patented (in 1880) to the defendant railway company. That company sold the lands to purchasers in good faith, and refuses to account to the United States for the proceeds of such sales.

The relief asked is a decree compelling the railway company to account for such proceeds, and declaring such indebtedness to be a lien upon all funds in its hands realized from the above sales. The company took issue with the Government by answer, but before the cause was heard the material facts were stipulated by the parties. The Circuit Court dismissed the bill and its judgment was affirmed by the Circuit Court of Appeals.

In order that the grounds upon which the lower courts proceeded may fully appear, the circumstances under which the defendant railroad company became connected with the lands must be stated.

By an act passed May 12, 1864, c. 84, 13 Stat. 72, Congress, in aid of the construction of certain railroads, granted to the State of Iowa, for the use and benefit of the McGregor Western Railroad Company, "every alternate section of land designated by odd numbers for ten sections in width on each side of said roads; but, in case it shall appear that the United States have, when the lines or routes of said roads are *definitely located,* sold any section or any part thereof granted as aforesaid, or that the right of preëmption or homestead settlement has attached to the same, or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the Secretary of the Interior to cause to be selected, for the purposes aforesaid, from the public lands of the United States nearest to the tiers of sections above specified, so much land in alternate sections, or parts of sections, designated by odd numbers, as shall be equal to such lands as the United States have sold, reserved, or

otherwise appropriated, or to which the right of home-
stead settlement or preëmption has attached, as aforesaid,
which lands thus indicated by odd numbers and sections, .
by the direction of the Secretary of the Interior, shall be  ·
held by the State of Iowa for the uses and purposes
aforesaid: *Provided,* That the lands so selected shall in no
case be located more than *twenty miles* from the lines of
said roads: *Provided, further,* That any and all lands .
heretofore reserved to the United States by any act of  ·
Congress, or in any other manner by competent authority,
for the purpose of aiding in any object of internal improve-
ment *or other purpose whatever,* be, and the same are  ·
hereby, reserved and *excepted from the operation of this act,*
except so far as it may be found necessary to locate the
routes of said roads through such reserved lands, in which  ·
case the right of way shall be granted, subject to the
approval of the President of the United States:" The  . ·
provisions of this act were duly accepted by the State in  ·
1866.  Laws of Iowa, 1866, p. 189, c. 144.

The McGregor Western Railroad Company failed to  ·
comply with the conditions of the above act.   Thereupon,
all lands and rights to land granted to it by the act of
1864 (the lands now in dispute being part of those so .
granted) were "absolutely and entirely resumed by the
State of Iowa," by an act of February 27, 1868, which de- · ·
clared that "the same be and are as fully and absolutely
vested in the State as if the same had never been granted
to said railroad company."  Laws of Iowa, 1868, p. 20.  The
State then, by an act of March 31, 1868, gave the benefit
of the grant for the road in question to the McGregor and
Sioux City Railway Company, which accepted the terms .
prescribed by that act.  Laws of Iowa, 1868, p. 70, c. 58.
But that company also failed to comply with the terms of .
the grant, and the lands and rights of lands granted were  .
again resumed by the State and afterwards were passed  ·
upon certain terms and conditions to the Chicago, Mil-

waukee and St. Paul Railway Company, by an act passed February 27, 1878. The latter company accepted the provisions of that grant, and in recognition of its rights the United States in 1880 patented to the State for the benefit of that company the following lands, covered by the act of 1864: 320 acres in Dickinson County, by patent of April, 1880; 3754.81 in Kossuth and Palo Alto Counties. These lands embraced all sued for except two tracts aggregating 200 acres in Kossuth County, to which the present defendant asserted no title. Laws of Iowa, 1878, p. 18, c. 21. Upon compliance with the terms and conditions prescribed in that act the Governor of Iowa was authorized to patent and transfer to the present defendant, the Chicago, Milwaukee and St. Paul Railway Company, the lands mentioned in the act of Congress of 1864.

In 1864 and 1869 maps of definite location, designating the line of said road in Iowa, as indicated in the act of 1864, were filed in the office of the Commissioner of the General Land Office.

It is alleged in the bill of complaint that, at the date of such definite location, all the lands, the proceeds of the sale of which the Government now claims and which were within the ten-mile or place limits of the railroad, were covered by existing claims of record in the office of the Commissioner of the General Land Office, consisting of homestead entries, preëmption declaratory statements, warrant locations, etc., and were pending before the Department of the Interior for adjudication. If that were true, then, by the very terms of the act of Congress, the lands in question would have been excepted from the grant of 1864. But the defendant denied in its answer that such fact existed, and it does not appear from the evidence that any homestead entry, preëmption, declaratory statement or warrant location had been made prior to the definite location of the line of the railroad. On the contrary, it was stipulated in the case that prior to and on

August 30, 1864—which was after the passage by Congress of the original granting act and was the date of the filing of the plat of definite location of the road—*none of the lands described in the bill of complaint had been covered by any homestead entry, preemption, declaratory statement or warrant location. or other existing claims of record in the office of the Commissioner of the General Land Office.* In that view, and if this were the whole case, then, beyond all question, the law would be in favor of the railway company; for the grant of 1864 was one *in præsenti* for the purposes therein mentioned, and according to the settled doctrines of this court, the beneficiary of the grant was entitled to the lands granted in place limits which had not been appropriated or reserved by the United States for any purpose or to which a homestead or pre-emption right had not attached *prior to the definite location of the road* proposed to be aided. The grant plainly included odd-numbered sections, within ten miles on each side of the road, which were part of the public domain, not previously appropriated or set apart for some specific purpose at the time of the definite location.

But the Government insists that before the passage of the act of 1864 these lands had been reserved by what was done under or in execution of what is known as the Swamp Land Act of September 28, 1850, and cannot, therefore, be regarded as granted by, but were excepted from the operation of, the act of 1864. 13 Stat. 72, § 1. Consequently, it is contended by the United States, patents could not have been legally issued to the railway company under the act of 1864. The contention of the railway company, on the other hand, is that the lands in question were not, in fact, swamp or overflowed lands granted by the act of 1850, to which any right could legally attach, in behalf of the State under that act; therefore, it is contended that nothing done under that act availed or could have availed the State except a decision

or ruling by competent authority, in due form, that these lands were, in fact, within the class of swamp or overflowed lands mentioned in the act of 1850.

In view of what has been said it becomes necessary to inquire into the scope and effect of the Swamp Land Act of 1850.

By the act of Congress of September 28, 1850, c. 84, 9 Stat. 519, Congress granted to Arkansas all the *swamp and overflowed lands* unfit for cultivation, within its limits, and which remained unsold at the time, to enable the State to construct the necessary levees and drains to reclaim such lands. That act provided that it should be "the duty of the Secretary of the Interior, as soon as may be practicable after the passage of this act, to make out an accurate list and plats of the lands described as aforesaid, and transmit the same to the governor of the State of Arkansas, and, at the request of said governor, cause a patent to be issued to the State therefor; and on that patent, the fee simple to said lands shall vest in the said State of Arkansas, subject to the disposal of the legislature thereof: *Provided, however,* That the *proceeds* of said lands, whether from sale or by direct appropriation in kind, shall be applied, exclusively, *as far as necessary,* to the purpose of reclaiming said lands by means of the levees and drains aforesaid," § 2; that "in making out a list and plats of the land aforesaid, all legal subdivisions, the greater part of which is 'wet and unfit for cultivation,' shall be included in said list and plats; but when the greater part of a subdivision is not of that character, the whole of it shall be excluded therefrom," § 3; and that "the provisions of this act be extended to, and their benefits be conferred upon, each of the other States of the Union in which such swamp and overflowed lands, known and designated as aforesaid, may be situated," § 4.

We have seen that by the act of 1864 the railroad company, by the grant *in præsenti* in that act contained, was

to get the odd-numbered sections, within ten miles on
each side of its line, and not sold by the United States
before definite location, or to which no right of preëmp-
tion or homestead settlement had attached at the time of
such location, or which had not been previously reserved
by the United States for some purpose. It is stipulated
that when the line of the railroad was definitely located
none of the lands in question "were covered by any home-
stead entry, preëmption, declaratory statements, or war-
rant locations, or other existing claims of record in the
office of the Commissioner of the General Land Office of
the Department of the Interior." But the United States
contends that what was done, prior to the definite location
of the road, for the purpose of bringing these lands under
the operation of the act of 1850 as swamp and over-
flowed lands, created a claim that covered or attached
to these lands. But this contention of the Government
must be considered in the light of the fundamental in-
quiry whether the latter claim can avail anything whatever
*if the lands were not in fact swamp or overflowed lands;* for,
only lands *of that character* were granted by the act of
1850, and no mere claim that they were swamp or over-
flowed lands could make them such, unless it was sustained
by some decision or ruling by competent authority to that
effect. There never was any such decision or ruling. It
is true that Dickinson, Palo Alto and Kossuth Counties—
acting, we may assume, for the purposes of this case, under
the sanction of the State—made selections of those lands
as swamp lands; but it is stipulated and agreed in this
case that those selections were never adopted, ratified or
confirmed in any manner by the Interior or Land Depart-
ment, but remained pending and undetermined therein
down to the year 1876; that "during that time the State
of Iowa claimed said lands as being swamp and overflowed
lands granted to it under and by virtue of said act of Con-
gress of September 28, 1850, and as having been selected

as such by said several counties under authority of an act
of its legislature, approved January 13, 1853; and said
McGregor Western Railroad Company and said McGregor
& Sioux City Railway Company (afterwards McGregor
and Missouri River Railway Company) successively made
claims to the same lands as being neither swamp or over-
flowed in character, but as inuring to them respectively,
under the act of Congress of May 12, 1864, as place lands,
within the ten mile limits of said grant, under the plat of
definite location filed August 30, 1864; that on May 31,
1876, and on October 21, 1876, the Commissioner of the
General Land Office upon public hearings of the matter
of such respective claims and after due notice to all parties
interested, duly held and adjudged in writing that the lands
in said Dickinson, Kossuth and Palo Alto Counties, Iowa,
mentioned and described in complainant's Exhibit 'A'
and in paragraphs 11 and 12 of defendant's answer in
this cause, were not *in fact swamp or overflowed lands*, and
were not *of a character embraced* in said act of Congress of
September 28, 1850, and known as the Swamp Land Act;
and that the State of Iowa and said several counties,
were never entitled to said lands, or any part thereof,
under said act.   Said hearings were had pursuant to the
requirements of the act of Congress of March 5, 1872, and
said findings and decisions of the commissioner were never
appealed from, reversed or modified in any manner as
shown by the records of said General Land Office."   Nearly
thirty years have passed since this decision of the Land
Department; and the United States, without ever appeal-
ing from the decision of the Land Department, now comes
forward and asks a court of equity to cancel the patent
issued in 1880 and 1881 under which the railway claims.
Touching this aspect of the case the Circuit Court of
Appeals said: "Since then most, if not all, of the lands
have been sold and conveyed to numerous purchasers of
small tracts who bought them in good faith and for value.'

Twenty-five years or more of quiet enjoyment of the land in question have now elapsed. No fraud or unfair practices in any stage of the proceeding leading up to the final patents are charged against the railway company or any person acting for it. In such circumstances, it would, in our opinion, be inequitable and conducive of no good results to grant the relief sought by this bill."

In determining this case it must not be overlooked that the act of Congress confers upon the Secretary of the Interior and upon him alone, the power to identify particular lands as swamp and overflowed lands embraced by the act of 1850. Referring to the second section of that act, Mr. Justice Miller, speaking for the court in *French* v. *Fyan*, 93 U. S. 169, 171, said: "It was under the power conferred by this section that the patent was issued under which defendant holds the lands. We are of opinion that this section devolved upon the Secretary, as the head of the Department which administered the affairs of the public lands, the duty, and conferred on him the power, of determining what lands were of the description granted by that act, and *made his office the tribunal whose decision on that subject was to be controlling*." To the same effect, on this point, are *Ehrhardt* v. *Hogaboom*, 115 U. S. 67, 68, and *Rogers Locomotive Machine Works* v. *American Emigrant Co.*, 164 U. S. 559, 571. In the latter case the court said: "The identification of lands as lands embraced by the swamp land act was therefore necessary before the State could claim a patent or exercise absolute control of them."

We repeat that it must be taken that these lands were not swamp or overflowed lands that had been reserved by the United States under the act of 1850. That fact must be regarded as conclusively established, as between the present parties. We say conclusively established; for, after full notice to all parties who were concerned in the matter and who had asserted titles to these lands, the

Commissioner of the General Land Office decided, in 1876, after full hearing, that these lands were not, in fact, swamp or overflowed lands, and that *neither the State nor any of its counties were entitled to them or any of them under the act of* 1850. That hearing by the commissioner was had pursuant to said act of Congress of March 5, 1872, c. 39, 17 Stat. 37, which provided, among other things, that the decision should be "without prejudice to legal entries or the rights of *bona fide* settlers under the homestead and preëmption laws of the United States prior to the date of this act." In any view, that decision was in contemplation of law one by the Secretary of the Interior, who, by the original act of 1850, was directed to make out accurate lists or plats of the lands described by that act as swamp and overflowed lands. *Wilcox* v. *Jackson*, 13 Pet. 498; *Wolsey* v. *Chapman*, 101 U. S. 755, 768. The decision was never appealed from, and has never been reversed or modified. The United States now comes, many years after such decision, and in disregard of the unreversed decision of the Land Department, asks a decree which cannot be rendered except upon the theory that these lands were, in fact, swamp or overflowed lands. We cannot adopt this theory nor make any such decree as that asked. By the act of 1850 Congress granted *in præsenti* to the State only swamp and overflowed lands within its limits, and the State legally, we may concede, for the purposes of this case, passed its interest in such lands to the counties in which they were situated. A dispute arose between the parties interested in the question before the Land Department, among whom were the counties claiming, by sanction of the State, to have legally selected the lands under the act of 1850, as to whether the lands were, in fact, swamp or overflowed lands. That dispute, upon notice and hearing as we have seen, was decided adversely to the contentions of the State and of the counties in question, by the Department which alone had authority to

determine what were and what were not swamp or over-
flowed lands. We perceive no sound reason why that
decision, unreversed and unmodified in any respect, should
not be accepted as conclusive of the essential facts upon
which it was based. In that view, the United States has
no standing in a court of equity to obtain a decree that
will be in disregard of the fact thus conclusively found by
the Land Department. Therefore, their certification to
the State for the benefit of the railway company, under
the act of 1864, cannot be held to have been an error. It
is, in substance, admitted—at any rate, the record shows—
that if the lands were not swamp or overflowed, the com-
pany was entitled to them under the act of 1864, as lands
not previously reserved but granted for the benefit of the
railway company. If, notwithstanding the decision of the
Land Department, the court should determine the rights
of the parties according to the facts presented to that
Department, it would be confronted with the fact, estab-
lished by the record, that the lands in question were not
swamp or overflowed. We omit any reference to other
questions, which, if determined, would lead to the same
result as above stated. The decree dismissing the bill was
right and *the judgment of the Circuit Court of Appeals is
sustained.*