UNITED STATES v. THIBODEAUX.

(Circuit Court of Appeals, Fifth Circuit. April 15, 1916. Rehearing Denied May 20, 1916.)

No. 2795.

1. EXCEPTIONS, BILL OF ⬤=39(1)—TIME TO FILE—EXPIRATION OF TERM.

The right to a bill of exceptions expires with the adjournment of the term at which the case was tried, unless there is an order, agreement of counsel, or ruling of the court granting time within which to file bills.

[Ed. Note.—For other cases, see Exceptions, Bill of, Cent. Dig. §§ 54, 56; Dec. Dig. ⬤=39(1).]

2. PUBLIC LANDS ⬤=60—SWAMP LANDS—EVIDENCE—SELECTION BY STATE.

In an action to recover the value of wood cut on certain land, to which defendant claimed title from the state of Louisiana, evidence *held* to show that the lands were selected by the state as swamp lands under the special grant to that state by Act March 2, 1849, c. 87, 9 Stat. 352, so as to justify a directed verdict.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 186, 187; Dec. Dig. ⬤=60.]

3. PUBLIC LANDS ⬤=60—ACTIONS FOR TIMBER—EVIDENCE—CHARACTER OF LANDS.

In an action to recover the value of wood cut on a tract of land which defendant claimed under a grant from the state of Louisiana, which claimed it as swamp lands selected by it under Special Act March 2, 1849,

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

c. 87, 9 Stat. 352, parol 'evidence is admissible to show that in 1850 the land was in fact swamp and overflowed lands, since, if it was such lands, the state's title was valid under Swamp Land Act Sept. 28, 1850, c. 84, 9 Stat. 519.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 186, 187; Dec. Dig. ☞60.]

In Error to the District Court of the United States for the Western, District of Louisiana; Aleck Boarman, Judge.

·Action by the United States against Oneziphore Thibodeaux to recover the value of wood cut and removed from a homestead entry. Judgment for defendant on a directed verdict, and the United States brings error. Affirmed.

Geo. Whitfield Jack, U. S. Atty., and Robert A. Hunter, Asst. U. S. Atty., both of Shreveport, La.

' E. B. Dubuisson, of Opelousas, La., for defendant in error.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

PARDEE, Circuit Judge. This is a suit brought by the United States to recover the value of wood cut and removed from an alleged unperfected homestead entry in a New Orleans, La., land district. The defendants answered, generally denying plaintiff's petition, and specially denying that the United States was the owner of the land described in the petition, and averring that the said lands were swamp lands inuring to the state of Louisiana under an act of Congress entitled "An act to aid the state of Louisiana in draining the swamp lands therein," approved March 2, 1849, and set forth a title under a patent from the state of Louisiana down to the present defendants. From an adverse verdict and judgment, the United States sued out this writ of error, assigning errors relating to the admission of evidence and the charge and refusals to charge of the trial court.

We find in the case no commendable, if legal and sufficient, bill of exceptions. What purports to be and is headed "Bill of Exceptions" commences with the title of the case; the list of the officials of the court; the filing of the original petition on February 9, 1911, which is fully set out; the service of citation on the 13th day of February, 1911; the subsequent filing on the 8th day of May, 1912, of an answer fully transcribed, and indorsed with statement that at a later date by consent the trial of the cause was continued from time to time and term to term until finally it was agreed that the same should be tried at Opelousas, La., on January 27, 1915, and at said date, the parties announcing themselves "Ready," the jury was fully impaneled, whereupon the following proceedings were had, the following evidence adduced, and the following objections were made and bills of exception taken, noted, and allowed during said trial, to wit: (Thereupon follows the court proceedings, appearances, and evidence, etc., giving and containing all the proceedings and evidence, documents, and exhibits up to the rendition of the verdict and judgment on January 28, 1915, on which day the court adjourned.)·

The next entry in said bill is an agreement of parties, dated May 25, 1915, in which it is agreed, among other things pertaining to the suit, that:

"Certain maps need not be copied or attached to the bill of exceptions, but shall be deemed and considered as a part of said bill of exceptions to the same extent as if formally inserted therein."

And thereupon the bill was authenticated by the court as follows:

"Examined and approved as to facts, but not as to legal sufficiency, this 26th day of May, 1915." Indorsed, "Filed May 31, 1915."

[1] The record shows that the term of court in which this case was tried was duly adjourned on the 28th day of January, 1915. Up to that date there does not appear to have been any order nor agreement of counsel nor rule of court granting time within which to file bills of exception. Without such order, agreement, or rule, the right to bill of exceptions expired with the adjournment of court. See Miller v. Morgan, 67 Fed. 82, 14 C. C. A. 312; United States v. Jones, 149 U. S. 262, 13 Sup. Ct. 840, 37 L. Ed. 726.

From subsequent printed matter in the transcript we find that to a petition filed on the 22d day of February, 1915, is attached the following order:

"The foregoing petition and agreement of counsel being considered, it is ordered that the plaintiff, the United States of America, be and is hereby granted an extension of time of 60 days to begin from the expiration of time originally allowed herein, to wit, 30 days from January 28, 1915, in which to file an assignment of errors and bills of exception in the above numbered and entitled cause. Said assignments of error and bills of exception to be filed on or before the 28th day of April, 1915. Thus done, read, and signed at Shreveport, Louisiana, the 22d day of February, 1915."

And thereafter, it appears, further extensions of time to file bills of exception were granted.

[2] If we assume from these orders extending time that the first order was granted before the term ended, then we find, passing over objections to evidence rejected and charges refused, that over the objections of the government the trial judge directed a verdict for the defendants. If this charge was correct, then the judgment should be affirmed; if not correct, then the judgment should be reversed. As stated in brief of counsel for defendants in error:

"The question to be decided is purely one of law, and is: Did the land in controversy inure to the state of Louisiana under the act of Congress of March 2, 1849 (9 Stats. 352), granting to the state the whole of the swamp and overflowed lands therein, 'which may be or are found unfit for cultivation?' Section 1 of the act provides that such lands 'shall be and the same are hereby granted' to the state of Louisiana. Section 2, that the Secretary of the Treasury, afterwards the Secretary of the Interior (Act March 3, 1849, c. 108; 9 Stat. 395) shall cause a personal examination to be made, under the direction of the Surveyor General of the state, 'by experienced and faithful deputies, of all the swamp lands therein which are subject to overflow and unfit for cultivation, and a list of the same to be made out, and certified by the deputies and Surveyor General to the Secretary of the Treasury, who shall approve the same, so far as they are not claimed or held by individuals; and on that approval, the fee simple to said lands shall vest in the said state of Louisiana, subject to the disposal of the Legislature thereof.' The evidence shows that

there was selected on behalf of, and on May 5, 1852, approved to, the State, under said act, in township 14 south, range 4 east:

The whole of section 23, containing 639.92 acres
The whole of section 24, containing 640.64 acres
The whole of section 25, containing 594.43 acres
The whole of section 26, containing 639.52 acres
The whole of section 27, containing 639.84 acres
The whole of section 28, containing 640.72 acres
The whole of section 32, containing 640.48 acres
The whole of section 33, containing 624.96 acres
The whole of section 34, containing 427.96 acres
The whole of section 35, containing 201.00 acres
The whole of section 36, containing  8.56 acres

Aggregating ..............5,698.03 acres

—and 'all the unsurveyed portion described as sea marsh in township 14 south, range 4 east, except section 16,' containing 18,622 acres.

"At the time when the selections were made, two official plats of the township were in existence—one approved May 1, 1848, offered by plaintiff; and one approved December 8, 1842, offered by defendant. Plaintiff contends that the selections were made from the map of 1848, and defendant that they were made from that of 1842. I submit that defendant's contention is the more reasonable, because an inspection of the two maps will show that, according to the map of 1848, only the northern fringe and a small portion of the western fringe of the township were surveyed, while according to that of 1842 only the southern portion was surveyed. Now the specific sections designated as having been selected, and their acreage, are precisely the sections shown to have been surveyed by the map of 1842, with the exact acreage assigned to them on that map. All the balance of the township, according to the map of 1842, was sea marsh. It is but a reasonable presumption, therefore, to assume that the man making the selections had before him the map of 1842, and, having specifically designated the sections appearing thereon as surveyed, with their acreage, he then selected the balance designated as sea marsh, excepting the school section, and approximated the whole of said balance at 18,622 acres. That acreage covered more than the balance of the township, because, if it be added to the aggregate acreage of the designated sections, we have an even greater total than a township contains. The selections could not have been made from the map of 1848, because not one of the specific sections selected is shown on that map, and not one of the sections shown on that map as surveyed was specifically selected."

With this view of the case we concur, and, as the defendants in error have an admitted title to the lands in question from the state of Louisiana, we find that verdict in their favor was properly directed.

[3] And it may be noticed that the directed charge may be sustained, because the case shows that in 1850 the lands in question were in fact swamp and overflowed lands. In the conglomerated bill of exceptions we find admission as follows:

"It is admitted by and between counsel for defendant that the witness, Theolin Landry, will swear that he is 74 years old, and has known the land in controversy since he was a small boy, and that it has always been of a swampy character and unfit for cultivation; that the land is, however, much higher or better drained to-day than it was formerly, and especially in the decade between 1860 and 1870, during which he assisted at a survey of a boundary line of the township; that the land has been in possession of the defendant and his authors as far back as 1860; he thinks it was 1855 or 1860 when possession was first taken of the land, and the defendant and his authors have always been in possession. The land is used for pasture—no part having been cultivated either by the defendant or his authors. Counsel for the government admits that the witness above referred to will swear to the facts

above set forth, but counsel for the government objects to the introduction of any parol testimony for the purpose of showing that the land in question was swamp and unfit for cultivation, on the ground that such testimony is inadmissible to establish defendant's contention that said land inured to the state under the swamp land grant act. And said testimony is therefore incompetent and irrelevant. (Objection overruled; to which ruling bill is reserved by counsel for the government.)"

We think this admission was admissible under the issues presented, and there is found no evidence to the contrary. If the lands were in fact swamp and overflowed lands in 1850, then the defendant's title was good. See Wright v. Roseberry, 121 U. S. 488–521, 7 Sup. Ct. 985, 30 L. Ed. 1039; Irwin v. San Francisco Savings Union, 136 U. S. 578, 10 Sup. Ct. 1064, 34 L. Ed. 540; United States v. Chicago, Milwaukee & St. Paul Ry., 218 U. S. 233, 31 Sup. Ct. 7, 54 L. Ed. 1015.

Judgment affirmed.