## McPHEE et al. v. GREAT NORTHERN RY. CO. et al.

(District Court, W. D. Washington, N. D.    July 19, 1921.    On Supplemental Briefs, November 9, 1921.)

No. 13-E.

1. **Public lands ☞81(1)—Land occupied by homestead claimant when selected held not to pass under railroad grant.**

   The right of a railroad company to select indemnity lands, under Act Aug. 5, 1892, does not include land held, at the time of its selection and when subsequently surveyed, by a bona fide homestead settler, nor does it pass under such selection on its subsequent relinquishment by the homesteader.

2. **Public lands ☞106(1)—Ruling that land was not subject to homestead entry held not to conclude subsequent applicant.**

   The rejection of a homestead application on the ground that the land had passed under a railroad grant is not res judicata as between the railroad company and the United States, and does not bind a purchaser of the applicant's improvements, and in whose favor he executed a relinquishment, who may institute a new homestead entry, if the land is in fact public land and subject to entry.

In Equity.    Suit by Albert R. McPhee and Frances McPhee against the Great Northern Railway Company and another.    On motion to dismiss bill.    Denied.

S. M. Bruce, of Bellingham, Wash., for plaintiffs.

Clinton W. Howard, of Bellingham, Wash., for Bellingham Bay Improvement Co.

Thomas Balmer, of Seattle, Wash., for Great Northern Ry. Co.

NETERER, District Judge.    Plaintiffs seek to establish title to the W. ½ of the N. W. ¼ and N. W. ¼ of the S. W. ¼ of section 12, township 39 north, range 6 east, and to have the defendants, in whom the said title rests by virtue of patent issued on the 24th day of July, 1919, declared as trustees for the plaintiff.    Plaintiff in substance alleges that in 1901 one C. C. Cole, qualified to enter public lands, settled upon and claimed said land, with the intention of acquiring a homestead.    Said lands at the said time were unsurveyed.    Cole erected a home and opened roads, and in the month of October, 1901, sold his improvements and right of occupancy to Daniel O'Donnell, qualified to make a homestead entry upon public lands; that O'Donnell went into the possession of said land with the intention of acquiring title, established his residence, "built houses and sheds, fenced and cleared ground, and posted notices showing the particular lands claimed by him," and continued to reside on said land until 1906, when for a valuable consideration he sold and conveyed his possessory right to one

Thurston, qualified to enter public lands, who entered upon the land for the purpose of acquiring homestead, and continued in possession until November, 1906, when for value he sold his improvements and possessory rights to the S. W. ¼ N. W. ¼, to Peter Beebe, who was qualified to enter public lands, with the intention of acquiring title under the homestead laws; that in September, 1909, for a valuable consideration, Beebe sold and conveyed his possessory rights and improvements to the plaintiffs, who entered into the possession of said lands for the purposes and intention of acquiring title thereto under the homestead laws, plaintiff being qualified to enter lands under the public land laws; that on the 19th of May, 1902, while O'Donnell was actually residing upon the said land with the intention as stated, the land being unsurveyed, the defendants filed in the office of United States Land Office at Seattle list No. 44, selecting said lands among others as lieu selection under the act of Congress approved August 5, 1892; that on February 6, 1907, the survey for said land was filed, and on the 23d of said month defendants described said lands conformable to such survey, which conformed to the lands claimed by the plaintiff by reason of the possessory rights and improvements made thereon and notices posted; that the defendants knew of the rights and claims of the plaintiff and his grantors, and that said lands were settled upon, and that homestead rights had been initiated and actively asserted; that on September 27, 1909, plaintiff made application to file his homestead entry on and for said land, tendered the money to the proper officers, which application was rejected, because in conflict with lieu selection list No. 44; from said decision plaintiffs appealed to the Commissioner of the General Land Office, and thereafter to the Secretary of the Interior, and that the proofs presented establish the right of the plaintiff to said land; that the filing of list No. 44 was a fraud upon the plaintiffs' grantors, making defendants trustees for the plaintiffs in obtaining the patent by misleading the officers of the Land Department; that the Land Department committed error of law in denying to the plaintiffs such land and awarding same to defendants. Many other allegations appear in the bill of complaint, but this is all that is material.

The defendants move to dismiss. From the exhibits and proceedings in the Land Department, the proofs entered as set forth in the complaint, it appears that on September 27, 1909, plaintiff, McPhee, tendered his homestead application for the lands herein described, which was rejected December 8, 1910, and November 18, 1914, for conflict with selection list No. 44, filed May 19, 1902, by the St. Paul, Minneapolis, & Manitoba Railway Company under the list filed May 19, 1902, under the Act of August 5, 1892, 27 Stat. 390, and plat of survey was filed in the local office February 6, 1907. On February 23, 1907, the railway company described the same lands as conforming to the survey. On April 8, 1916, plaintiff filed a petition for the exercise by department of supervisory authority in the matter of his application, which was decided April 18, 1916, against the plaintiff. In the decision the Assistant Secretary says:

"The affidavit of McPhee alleges that the land applied for by him was, in 1901, embraced in the settlement of one Al. Small, who sold whatever rights he might have to Dan O'Donnell; that O'Donnell went into actual occupation of the land, and was a settler thereon at the time of the filing of railway company's list. O'Donnell later sold his improvements · to John W. Thurston, it' being further alleged that O'Donnell's house or cabin was situated upon the S. W. ¼ N. W. ¼, Sec. 12, as to which McPhee is corroborated by one Benson.. The affidavit of Peter Beebe states that, beginning in August, 1906, he claimed a settlement right upon the S. ½ S. W. ¼, Sec. 1, and N. ½ N. W. ¼, Sec. 12. In November, 1906, however, in consideration of $50 paid to him by Thurston, he changed his claim to the S. W. ¼ S. W. ¼, Sec. 1, W. ½ N. W. ¼ and N. W. ¼ S. W. ¼, Sec. 12, which included the tract upon which O'Donnell's cabin was located. No affidavit by O'Donnell has been filed by McPhee.

"The records of the department disclose that upon February 6, 1907, John W. Thurston made homestead application  *  *  * for the S. W. ¼ S. W. ¼, Sec. 1, E. ½ N. W. ¼ and N. E. ¼ S. W. ¼, Sec. 12, which was rejected because of conflict with the railway company's selection as to all tracts except the S. E.. ¼ S. W. ¼, Sec. 1. By departmental decision of March 19, 1910, a hearing was ordered to determine the rights between Thurston and the railway company. At this hearing Small testified that in 1901 he was employed to construct a cabin upon the land by C. C. Cole. Cole sold the cabin before its completion to Dan O'Donnell, who finished it and established residence therein prior to May 9, 1902. O'Donnell also posted a notice of his settlement, but the exact description of the land claimed by him does not appear. O'Donnell testified to his settlement upon the land claimed by Thurston and that he sold whatever rights he had to Thurston in the fall of 1906. Thurston testified that his purchase from O'Donnell was upon October 22, 1906, and that he himself established residence in December, 1906. Thurston stated in his testimony: 'Q. Now when did you take up your residence on the land? A. That same fall; being a quarter of a mile back from there, I drops one forty and takes another forty, and I takes my improvements and puts them down on another forty. I didn't want to move my children and family up in the cabin, so I put up a cabin there.' This may, perhaps, refer to the transaction alleged in Beebe's affidavit. As the result of the hearing, Thurston's application was allowed August 23, 1911. He made final proof September 28, 1912, final certificate issuing January 24, 1913, and patent April 29, 1913.

"February 6, 1907, Peter Beebe filed homestead application for the S. W. ¼ S. W. ¼, Sec. 1, W. ½ N. W. ¼ and N. W. ¼ S. W. ¼, Sec. 12, which was rejected by the register and receiver as to the lands in section 12 for conflict with the railway selection. Upon appeal their action was affirmed by the Commissioner in a decision dated July 28, 1909, notice of which was served upon Beebe's attorney September 21, 1909. September 23, 1909, Beebe executed a relinquishment of the W. ½ N. W. ¼ and N. W. ¼ S. W. ¼, Sec. 12, to the United States, stating therein that he has transferred 'my right and good will to E. R. McPhee.' The relinquishment which had been purchased by McPhee for the sum of $50.00 was filed September 27, 1909, concurrently with his homestead application. Beebe's application was allowed as to the S. W. ¼ S. W. ¼, Sec. 1, August 21, 1909,  *  *  * upon which patent was issued April 23, 1915.

"From the above facts it is apparent that McPhee's claim is based upon the proposition that the land applied for by him was excepted from the railway selection by virtue of O'Donnell's settlement. McPhee failed to show any privity with O'Donnell, or exactly what land O'Donnell claimed under his settlement. Further, the settlement of O'Donnell is the same as that asserted by Thurston as transferee from O'Donnell. Thurston's application was allowed on the basis of O'Donnell's settlement right. The petition, however, asserts that, if the showing made in the affidavits submitted by McPhee is correct, the action of the department in allowing Thurston's application was erroneous, and that a suit to set aside the patent issued to Thurston might be instituted. Thurston's final proof, which was substantiated by

a filed investigation, disclosed that he established residence in December, 1906, lived continuously upon the land with his family, cultivated about one acre, and has a house, barn, and other improvements valued at $3,000.

"O'Donnell's settlement claim in any event could not exceed 160 acres. O'Donnell was not in privity with McPhee, but was with Thurston. The particular 160 acres claimed by O'Donnell was asserted by Thurston to be the same tract applied for by him, and was so determined by the department without objection from McPhee. *McPhee purchased Beebe's relinquishment after Beebe's application had been rejected*, and failed to file any protest against the allowance of Thurston's entry." (Italics mine.)

The facts as found by the Assistant Commissioner are supported by the testimony in the record. The legal conclusion of the Commissioner as to the fact of residence, and the boundaries of the O'Donnell claim so far as settlement and residence is concerned, is erroneous. The cabin was built by Cole and O'Donnell, occupied by O'Donnell, and was upon the S. W. ¼ of the N. W. ¼ of section 12, at the time the script was filed. That O'Donnell conveyed his right to his claim, including the S. W. ¼ N. W. ¼ to Thurston, and that Thurston conveyed his right to the S. W. ¼ N. W. ¼ to Beebe, is undisputed. The fact that each filed upon their claims in harmony with this division is conclusive, and Thurston testifies that, "being a quarter of a mile back from there, I drops one forty and takes another forty." The 40 that he dropped was the 40 that Beebe obtained, on which was the cabin; and the 40 Thurston took was the 40 he got from Beebe.

The intent of the occupant O'Donnell, in the absence of proof to the contrary, is conclusive that it was to enter the land that he occupied, and as the qualifications of Dan O'Donnell as a settler upon public land is absent from the formal application, the department having jurisdiction, opportunity should have been given to supply the qualification, as was done in the Thurston Case, decision October 25, 1910, in which it is said:

" * * * There appears in the record of the proceedings no testimony tending to prove O'Donnell's qualifications to make entry of the land. You will therefore call upon Thurston to file the affidavit of Mr. O'Donnell, duly corroborated by two witnesses as to his qualifications on May 9, 1902, for consideration with the evidence in the case."

This proof in this case was filed by McPhee with his petition. By this the privity between O'Donnell and McPhee is established, provided the decision of the Commissioner of July 28, 1909, upon appeal, rejecting the application of Peter Beebe for homestead entry upon the S. W. ¼ of the N. W. ¼ of section 12 does not intervene. The right of Beebe to the cabin and improvements could be transferred to McPhee, notwithstanding the rejection of his application. There is no proof in the record, other than the departmental decision, as to the Beebe rejection; but I think the department has a right to judicially know the condition and status of its own records, especially in view of the relation of Beebe, Thurston, and McPhee to this record.

By Departmental Decision, Frank et al. v. Northern Pac. Ry. Co., 37 Land. Dec. 193, and page 502 on review, it is held that public land may not be selected under the Act of August 5, 1892, when embraced within a bona fide settlement claim. The Supreme Court, in St. Paul, M. & M. Ry. Co. v. Donohue, 210 U. S. 21, 28 Sup. Ct. 600, 52 L. Ed.

941, held in effect that the right under the Act of August 5, 1892, to select indemnity lands to which no adverse rights or claim had attached, or been initiated, does not include land which had been entered in good faith by a homesteader at the time of the supplemental selection, and, on a relinquishment being properly filed by the homesteader, the land becomes open for settlement, and the railway under the act is not entitled to the land under a selection filed prior to such relinquishment.

There is no question from the record in this case that O'Donnell was a qualified entryman in 1902, and that he had settled upon the S. W. ¼ N. W. ¼ of section 12 with the intention of making a homestead entry, that he transferred this right to Thurston, which included adjoining lands, that Thurston conveyed his right to this 40 acres to Beebe, and that at the time the scrip was filed a bona fide settlement was initiated. This, however, Beebe failed to establish. As a matter of law at the time of filing the scrip the Railway Company had no right by reason of its selection to this land. Did the adjustment of the survey February 23, 1907, validate the railway selection, when Beebe's relinquishment was filed, or when his right was adjudicated against him, or was the land open for settlement, and did the settlement and application to enter on the part of McPhee initiate a right to the land which should upon the record have been allowed by the Land Department?

Upon this issue the parties may present a further brief.

## On Supplemental Briefs.

[1, 2] Upon consideration of the supplemental briefs, the conclusion must follow that upon the settlement by O'Donnell in 1902 a claim was initiated and attached which reserved the land in issue from operation of lieu selection. Sherman v. Buick, 93 U. S. 209, 23 L. Ed. 849; Kansas Pac. Ry. Co. v. Dunmeyer, 113 U. S. 629, 5 Sup. Ct. 566, 28 L. Ed. 1122; Hastings & D. R. Co. v. Whitney, 132 U. S. 357, 10 Sup. Ct. 112, 33 L. Ed. 363; Holten v. St. Paul, M. & M. Ry. Co., 17 Land Dec. 537; and the continuity of interest in the improvements and settlement upon the land from O'Donnell to McPhee being established, McPhee by his complaint shows a right to the land. N. P. Ry. Co. v. Trodick, 221 U. S. 208, 31 Sup. Ct. 607, 55 L. Ed. 704; Osborn v. Froyseth, 216 U. S. 571, 30 Sup. Ct. 420, 54 L. Ed. 619; Svor v. Morris, 227 U. S. 524, 33 Sup. Ct. 385, 57 L. Ed. 623. The adjustment of the survey did not validate the selection as the land was not open for selection. Kan. P. Ry. Co. v. Dunmeyer, supra. The rejection of Beebe's application is not res adjudicata as to the United States. The land being open to entry, McPhee, being competent, was qualified to assert any right which might be claimed by the United States.

The mala fides charged in argument with relation to transfer from Thurston to Beebe, tainting the transaction with fraud, destroying transferable interest, is not established. The intent is clearly established that the purpose was not to procure land for another, but rather to procure the particular land for themselves, and an exchange of improvements and right of occupancy to the particular subdivisions shown

is not conduct denounced, as contrary to public policy. Bailey v. Sanders, 228 U. S. 603, 33 Sup. Ct. 602, 57 L. Ed. 985, and other cases cited are predicated upon a different state of facts, and where the person occupied a wholly different relation than McPhee.

The demurrer is overruled.