# GERMANIA IRON COMPANY *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 52. Argued October 20, 1896.—Decided February 15, 1897.

When, while disputed matters of fact concerning a tract of public land, or the priority of right of claimants thereto, are pending unsettled in the land department, a patent wrongfully issues for the tract through inadvertence or mistake, by which the jurisdiction conferred by law upon the land department over these disputed questions of fact is lost, a court of equity may rightfully interfere, and restore such lost jurisdiction by cancelling the patent.

On November 20, 1889, a patent was issued by the United States to Thomas Reed for the southwest quarter of the northeast quarter and lots 1 and 2 of section 30, township 63, north of range 11 west, containing one hundred and twelve acres, in the Duluth land district of the State of Minnesota. On October 13, 1891, the United States filed in the Circuit Court of the District of Minnesota a bill in equity to set aside such patent, making Thomas Reed the patentee and the appellants in this case parties defendant. These appellants claimed title by conveyances from Reed. Reed made default in the suit, but the appellants appeared and answered, and to their answer

a replication was filed. Whereupon, some testimony having been taken, the case was submitted to the court with certain stipulations of fact; and upon the pleadings and these stipulations a decree was entered sustaining the bill and cancelling the patent. On appeal to the Circuit Court of Appeals this decree was affirmed, 19 U. S. App. 10, and thereafter an appeal was taken to this court.

The facts as shown by the pleadings and stipulations are these: On July 21, 1885, Orilie Stram, formerly Moreau, attempted to make a location of the land in controversy with Sioux half-breed scrip. The validity of these locations was contested by other parties, and on February 18, 1889, the Secretary of the Interior, who had jurisdiction over the matter and the parties, cancelled such scrip locations, and ordered that the land be held for disposal under the public land laws of the United States. On February 23, 1889, Thomas Reed applied to make a soldier's additional homestead entry of the lands, which application was sustained by the local land officers, and a final certificate issued to him on that day. "At the same time that Reed made his entry Charles P. Wheeler applied to locate the southwest quarter of the northeast quarter of said section 30 with Valentine scrip," and "Warren Wing had applied to enter lot two of said section 30 under § 2306, Rev. Stat." "On the morning of the day when the Reed entry was allowed William M. Stokes was, among other applicants to make various kinds of entries before and at the time of the opening of the doors of the local land office at Duluth, present at said doors and attempting to enter . . . said southwest quarter of the northeast quarter of said section 30 as a soldier's additional homestead." The applications of Wheeler, Wing and Stokes were severally denied, and appeals were taken from such denials to the Commissioner of the General Land Office.

On February 18, 1889, the time of the decision by the Secretary of the Interior in respect to the attempted location by Orilie Stram, and ever since, there has been in existence in the Department of the Interior a rule that motions for review of decisions of the Secretary of the Interior should be filed in the

office of the Commissioner of the General Land Office, and that the Commissioner should thereupon suspend action under the decision sought to be reviewed. Motions for review of the decision of date February 18 were duly made and filed on March 13 and 15, 1889, respectively, by the parties affected adversely by said decision. Thereupon an order was made suspending all action under the decision sought to be reviewed, and such order was of force and such motions were pending unheard and undetermined at the time and after the issuing of the patent sought to be cancelled, and the patent was issued in direct violation or in ignorance of such order. At the time of the issue of such patent the appeals of Wheeler, Wing and Stokes were also pending unheard and undetermined, and have not been since heard or determined.

" While said appeals and motions were pending and undisposed of, a clerk of the General Land Office at Washington, whose duty it was to examine entries of the character described, in ignorance of the pendency of said conflicting claims, said motions and said appeals, approved the lands described in the said patent for patenting to Thomas Reed, one of the defendants hereto and a patent was, upon such approval, issued to him on the 20th day of November, 1889; that said patent was signed by the secretary to the President and countersigned by the recorder of the General Land Office, each of whom, at the time they signed and countersigned said patent as aforesaid, was in ignorance of the pendency of the aforesaid conflicting claims, and acted wholly upon the said approval of said clerk. The approval of the entry for patent and the signatures to the patent were made, notwithstanding the fact that a caveat pointing out the conflicts was on file with the rest of the entry papers relating to the lands involved and such approval and signatures were made in ignorance of the contents of said caveat."

The appellants made no claim as *bona fide* purchasers, and the case stood as though it were a proceeding against the patentee alone. So far as it bore on the question of good faith, it was admitted that the land was worth $75,000, as alleged in the bill.

*Mr. William W. Billson* for appellants.

*Mr. Assistant Attorney General Dickinson* for appellees.

MR. JUSTICE BREWER delivered the opinion of the court.

Appellants contend that this bill cannot be sustained because, first, no fraud is proved or even charged against the patentee; second, there is no showing that the other applicants for these lands had or have any rights superior to the patentee; third, that it is neither proved nor alleged that the patentee was not equitably as well as legally entitled to the lands; fourth, that the utmost that appears is the premature issue of a patent through mistake and inadvertence and in disregard of one of the rules of the department, and that such matters lay no foundation for the interposition of a court of equity unless accompanied by a trespass on some substantial right. They insist that a vendor cannot ask the aid of a court of equity to avoid his deed on the mere ground of irregularity on the part of his agents unless he also shows that the grantee in such deed was not equitably entitled to the conveyance; that courts never attempt to do a useless thing, and that it would be idle to enter a decree cancelling a patent, when for aught that appears it would be the duty of the government, after some formal proceedings and compliance with certain regulations, to reissue to the patentee a patent for the same lands. In other words, their contention is that this whole litigation is merely a dispute about form and order of proceeding, and not about substantial rights. Many authorities from this court and others are cited showing the conditions under which courts of equity will interfere to cancel patents and deeds on the ground of fraud, or by reason of other facts showing that the patentee or grantee is not of right entitled to the land. We have no disposition to weaken the force of these authorities, or to question their control in cases to which they are applicable. A patent from the United States is a solemn muniment of title not lightly to be challenged or set aside, and all that has been heretofore said in support of the sanctity of such an instrument we reaffirm.

But the theory of this bill is outside the scope of all such cases. It does not rest upon doubtful and uncertain testimony. The facts are conceded, and there is, therefore, certainty as to what they are. The only question presented is as to the right which flows from these undisputed and admitted facts. It is in effect a suit by the government to restore to a tribunal to which it has committed exclusive jurisdiction over certain matters that jurisdiction which through inadvertence and mistake it has been deprived of. "Relief, when deeds or other instruments are executed by mistake or inadvertence of agents, as well as upon false suggestions, is a common head of equity jurisprudence." *Hughes* v. *United States,* 4 Wall. 232, 236. Congress has entrusted to the land department the disposal of the public lands, and has invested the officers of that department with exclusive jurisdiction over many things in connection with such disposition. Their determination in respect to questions of fact in all matters of contest is exclusive and final. The issue of a patent is in effect the final determination of that department in favor of the patentee and against the contestants of all disputed questions of fact — a determination which it is not the function of courts to review except upon conditions of fraud, etc., which permit courts of equity to investigate and pass judgment upon all determinations of all tribunals. By inadvertence and mistake a patent in this case has been issued, and the effect of such issue is to transfer the legal title and remove from the jurisdiction of the land department the inquiry into and consideration of such disputed questions of fact.

The contention of the appellants is substantially that the courts must consider and determine those disputed questions of fact and exercise a jurisdiction not committed to them, before they restore to the land department the jurisdiction of which it has been wrongfully deprived. But why should the courts be called upon to consider and determine questions of fact, and after a determination adversely to the patentee relegate the matter for reëxamination and determination in the land department? Is not the duty of the court fully performed when it ascertains that through such inadvertence

and mistake the department which has jurisdiction over such matters has been deprived thereof? It restores to such department its lost jurisdiction and leaves to the tribunal designated by Congress the full power to discharge the duties conferred upon it. It is true that it does not affirmatively appear in this case that the patentee was not entitled equitably to the land, or that the contestants had any superior right thereto, but his rights and their rights depend upon questions of fact, such as priority of application, etc., the determination of which by act of Congress has been committed to the land department. It and not a court of equity is the tribunal entrusted by the law with jurisdiction over such matters, and the latter may not inquire what ought to have been the determination of the former, but whether it has been wrongfully deprived of the power to make such determination.

The question is not one simply between the government and the patentee — a vendor and vendee — such as was presented in *United States* v. *Railroad Company*, 26 Fed. Rep. 479. In that case there were no adverse or contesting rights; equitably the patentee was entitled to the land, and the only real objection was that the patent had been prematurely issued. A court might properly decline to set aside a patent when it affirmatively appeared that immediately after such action it would be the duty of the department to issue a new one. Here there are adverse claimants, there are contestants of the patentee's right, and the mere existence of a question of contested fact, the mere fact of a dispute between several parties, is sufficient ground for a court of equity returning the matter for examination to the tribunal which Congress has created for such purposes. This is not a mere matter of procedure between the government and the patentee, but a question of the forum for the adjudication of controversies between individual litigants.

The case of *Badeau* v. *United States*, 130 U. S. 439, is not in point, for there the only question was one between the United States and the claimant, and involved simply the amount of money due to the latter. The case of *Williams* v. *United States*, 138 U. S. 514, is more in point; for in that case

this court sustained a decree cancelling a patent although no fraud was shown, and its issue was simply owing to inadvertence and mistake. We are of the opinion that the ruling of the Circuit Court and the Court of Appeals was correct; that the matters of fact involved in these contests should be settled by the land department; that when through inadvertence and mistake a patent has been wrongfully issued, by which the jurisdiction of the land department over these disputed questions of fact is lost, a court of equity may rightfully interfere and restore such lost jurisdiction, to do which it becomes necessary to cancel the patent.

To deny relief in this case would open the door to many possibilities of wrong. It appears that although an order had been made to suspend all action in respect to the application for this patent, somehow or other the clerk having charge of the proceedings in respect to it was ignorant of such order, and that although in the papers handed to him was the formal entry of an appearance for a contestee, he failed to examine such instrument, and assumed that it was a mere entry of an appearance in behalf of the applicant. Upon the showing made in this case he was innocent of wrong intent, but if such omission can be operative to deprive the land department of its appropriate jurisdiction, it affords too strong an inducement for an intentional omission, proof of which may well be beyond the power of the government. The decree of the Court of Appeals is

*Affirmed.*

Mr. Justice Gray was not present at the argument and took no part in the decision of this case.