SAGE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. July 10, 1905.)

No. 2,230.

1. PUBLIC LANDS—RAILROAD GRANT—SUIT UNDER ADJUSTMENT ACT.

The sole scope and purpose of Act March 3, 1887, c. 376, 24 Stat. 556 [U. S. Comp. St. 1901, p. 1595], providing for the adjustment of railroad land grants and the bringing of suits by the United States to recover lands erroneously certified or patented thereunder, is to restore to the Land Department of the government its exclusive jurisdiction to primarily determine all questions affecting rights to the public lands, which through fraud or mistake it has lost by an erroneous certification or patenting with respect to the lands in question; and such act confers no jurisdiction on the courts to determine, in a suit brought thereunder, the right of the railroad company grantee to the lands involved or of an adverse claimant thereto.

2. SAME—MISTAKE—ISSUANCE OF PATENT PENDING ADVERSE CLAIM.

Where it is shown that a tract of land was certified and patented under a railroad grant while an application for a homestead entry thereon was pending on appeal in the Land Department which, through mistake, had not been entered upon the records, thus depriving the department of the power to determine the homestead claimant's rights on the merits, a case of erroneous patenting is made out, which entitles the government to a cancellation of the patent in a suit brought therefor under Adjustment Act March 3, 1887, c. 376, 24 Stat. 556 [U. S. Comp. St. 1901, p. 1595].

Appeal from the Circuit Court of the United States for the District of Minnesota.

This suit was brought by the government to cancel the certification of 128 acres of land in Swift county, Minn., certified by the government to the state of Minnesota in aid of the Hastings & Dakota Railway Company for whose stockholders appellant, Russell Sage, is trustee. The suit is brought under the provisions of section 2 of an act of Congress, approved March 3, 1887 (24 Stat. 556, c. 376 [U. S. Comp. St. 1901, p. 1595]). It is based on the following state of facts: By act of the Legislature of the territory of Minnesota, approved February 20, 1857, the Hastings, Minnesota River & Red River of the North Railroad Company was incorporated for the purpose of constructing a line of railway from the city of Hastings, Dakota county, Minn., westward through the then territory of Minnesota, to its western boundary, and branch lines. Thereafter Congress by act approved July 4, 1866 (14 Stat. 87, c. 168), granted to the state of Minnesota, in aid of the construction of the railroad, land as follows: "Every alternate section of land designated by odd numbers to the amount of five alternate sections per mile on each side of said road, and further provided that in case it shall appear that the United States have, when the lines of routes of said road are definitely located, sold any section or part thereof granted as aforesaid, or that the right of pre-emption or homestead settlement has attached to the same or that the same has been reserved by the United States for any purpose whatever, then it shall be the duty of the Secretary of the Interior to cause to be selected for the purposes aforesaid from the public lands of the United States, nearest to the tiers of sections above specified, so much land in alternate sections or parts thereof, designated by odd numbers as shall be equal to such lands as the United States have sold, reserved or otherwise appropriated, or to which the right of homestead or pre-emption settlement has attached, which lands thus indicated by odd numbers and sections, by the direction of the Secretary of the Interior, shall be held by said state of Minnesota, for the purposes and uses aforesaid, provided that the lands so selected shall in no case be located more than twenty miles from the lines of said road." Thereafter, on March 7, 1867, the state accepted the grant, and on June 26, 1867, the railroad company filed

140 F.—5

its map of definite location in the government Land Office. On April 22, 1868, the Land Department of the government withdrew from entry the odd-numbered sections within 20 miles of the line of definite location of the railroad, as provided in the act making the grant. Thereafter the Legislature of the state of Minnesota changed the name of said railroad company to the Hastings & Dakota Railway Company. The railway company, before January 10, 1880, constructed the line of road, and thus earned and became entitled to the land granted, where not otherwise appropriated, in accordance with the terms of the grant. On May 26, 1883, the railway company selected 68,562.83 acres of land within the place and indemnity limits, which amount fell far below the full amount necessary to satisfy the grant, and if all the available lands within the indemnity limits, not otherwise appropriated, had at this time been selected, there would not have been sufficient to satisfy the entire grant. ·On October 23, 1891, this selection was rejected because the specific tracts of land claimed were not designated in the selection. Thereafter, on October 29, 1891, appellant, as trustee of the railway company, made a selection of the land in controversy and all other lands available, and this selection was approved by the 'Secretary of the Interior March 29, 1897. In the year 1887, the state of Minnesota annulled the charter of the railway company, and all its assets, including the lands granted, were conveyed to appellant, Russell Sage, in trust for the benefit of its shareholders.

In the month of April, 1882, one Andrew E. Rockvog entered on and took possession of the land in question for the purpose and with the intent of making a homestead entry thereon, and has ever since continued to live on, improve, and cultivate the land, building thereon a dwelling house, barns, granaries, and other buildings requisite for farming purposes, to the value of $1,000, and has cultivated about 75 acres of the land. On the 31st day of August, 1894, Rockvog made his application to enter the land at the local land office. This application was, without action by the officers of the local land office, transmitted to the Commissioner of the General Land Office, who, on November 22, 1899, referred the application back to the local land office with directions to grant a hearing thereon. Thereafter, on the 10th day of January, 1900, a hearing was had on the application before the register of the local land office in pursuance of instructions from the Commissioner of the General Land Office, and a decision was rendered by the register allowing the application. Thereafter, on the 20th day of February, 1900, appellant, as trustee for the shareholders of the railway company, appealed from this decision to the Commissioner of the General Land Office. Thereafter, on the 1st day of September, 1900, the Commissioner, having considered the appeal, ordered the tract of land in controversy should be held for cancellation subject to the appeal by the railway company from such decision. Thereafter, on the 11th day of September, 1900, the Commissioner vacated and set aside his decision of September 1, 1900, on the ground that through inadvertence and mistake the fact had not been made to appear the land had theretofore been certified by the Secretary of the Interior to the state of Minnesota, and further ordered the railway company should be allowed 60 days within which to show cause why the title to the land should not be recovered by the United States, under the provisions of the act ·upon which the suit is based. No appeal was taken from this order. The Commissioner demanded of the appellant a reconveyance of the land in accordance with the provisions of the act under which this suit was brought, which was refused. Thereupon, this suit was brought.

The case was submitted to the court for decision upon an agreed statement of facts, in which appear the following admissions and stipulations of parties: "That unintentionally, and through the mistake of the officers of the General Land Office, the application of said Rockvog to enter said land and the appeal therefrom were not entered upon the tract books kept in the office of the Commissioner of the General Land Office, and no entry of said application or of said appeal or of the filing of the same in said General Land Office was made upon any of the records contained therein prior to the approval of said railroad indemnity selection of October 29, 1891, and the certification of said lands as aforesaid. That while said homestead application and appeal were in the said General Land Office, and so omitted from the records thereof, the

said Commissioner of the General Land Office, at the request of the Secretary of the Interior, prepared a list of the lands embraced within the indemnity grant of said Hastings & Dakota Railway Company, as to which there appears to be no claim adverse to the claim of the said defendant Sage in said selection of October 29, 1891, the said Secretary of the Interior, by reason of said omissious in the books, and not having any knowledge of the pendency of said homestead application and appeal in said General Land Office, and the Commissioner of the General Land Office in making said list, by reason of the omission of said application and appeal from the records of said office, unintentionally and through the mistake of the officers of the General Land Office overlooking the same, prepared a clear list of said lands and certification to the state of Minnesota for the benefit of said railroad grant, which, by such mistake, included the land in controversy."

The trial resulted in a decree canceling and annulling the certification of the land to the state of Minnesota and the conveyance by the state to appellant, and restored the land to the government free and clear of any right, title, or claim on the part of appellant under the certification to the state, and the conveyance made by the state to appellant. From this decree defendant below appeals.

Owen Morris, for appellant.

Charles C. Houpt, for the United States.

Before HOOK, Circuit Judge, and GARLAND and POLLOCK, District Judges.

POLLOCK, District Judge, after stating the case as above, delivered the opinion of the court.

Act March 3, 1887, c. 376, 24 Stat. 556 [U. S. Comp. St. 1901, p. 1595], under which this suit was instituted, empowers the Secretary of the Interior to adjust the land grants theretofore made by Congress in aid of the construction of railroads remaining unadjusted. Section 2 of the act provides as follows:

"That if it shall appear, upon the completion of such adjustments respectfully, or sooner, that lands have been, from any cause, heretofore erroneously certified or patented by the United States, to or for the use or benefit of any company claiming by, through, or under grant from the United States, to aid in the construction of a railroad, it shall be the duty of the Secretary of the Interior to thereupon demand from such company a relinquishment or reconveyance to the United States of all such lands, whether within granted or indemnity limits; and if such company shall neglect or fail to so reconvey such lands to the United States within ninety days after the aforesaid demand shall have been made, it shall thereupon be the duty of the Attorney General to commence and prosecute in the proper courts the necessary proceedings to cancel all patents, certification, or other evidence of title heretofore issued for such lands, and to restore the title thereof to the United States."

The object and purpose of this act was not to confer jurisdiction on the federal courts to hear or determine any question affecting the right of any party contesting for or claiming an interest in any portion of the public domain. The Land Department of the government is by law invested with primary jurisdiction over the disposition of the public lands, and is empowered, in the exercise of that jurisdiction, to try and determine all adverse claims thereto. Its decisions are final and conclusive as to matters of fact, and subject to correction by the courts only in matters of law after final hearing and conveyance by the government. In the exercise of that jurisdiction the land department is a judicial tribunal. Its rulings are judicial determinations. The sole scope and

purpose of the act above cited is to restore to that tribunal jurisdiction in any case where, through fraud or mistake, an erroneous certification has been made or patent issued, thus depriving that tribunal of jurisdiction, and to the end that it may proceed untrammeled to final hearing and decision. Mr. Justice Brewer, in delivering the opinion of the court in Germania Iron Company v. United States, 165 U. S. 379, 17 Sup. Ct. 337, 41 L. Ed. 754, said:

"But the theory of this bill is outside the scope of all such cases. It does not rest upon doubtful and uncertain testimony. The facts are conceded, and there is, therefore, certainty as to what they are. The only question presented is as to the right which flows from these undisputed and admitted facts. It is in effect a suit by the government to restore to a tribunal to which it has committed exclusive jurisdiction over certain matters that jurisdiction which through inadvertence and mistake it has been deprived of."

In speaking of the primary and exclusive jurisdiction of the Land Department of the government, it is further said in the opinion:

"Congress has intrusted to the Land Department the disposal of the public lands, and has invested the officers of that department with exclusive jurisdiction over many things in connection with such disposition. Their determination in respect to questions of fact in all matters of contest is exclusive and final. The issue of a patent is in effect the final determination of that department in favor of the patentee and against the contestants of all disputed questions of fact—a determination which it is not the function of courts to review except upon conditions of fraud, etc., which permit courts of equity to investigate and pass judgment upon all determinations of all tribunals."

Thus far, however, solicitors for the respective parties in the case at bar agree. It is, however, contended by solicitor for appellant, the law will not do a useless thing; that by reference to the agreed facts it will be seen the right of appellant, as the representative of those beneficially interested in the assets of the railway company, to receive title to the land in dispute is so clear, certain, and indisputable as to be beyond the pale of controversy; and in consequence, the cancellation of the certification to the state and the conveyance by the state to appellant, as is done by the decree entered, is a mere idle form, for that in the end the land must inevitably go to the appellant in any event. And many cases are cited and commented upon in his brief which it is claimed support this contention. As to the ultimate rights of the parties, as they must hereafter be determined by the appropriate tribunal, from the facts, we express no opinion; for, as has been seen, the trial court did not have, nor does this court have, the jurisdiction and power to so do in this suit. The government is here in its own right, seeking by force of the act to repossess itself of a portion of the public domain, not for the purpose of withholding it from appellant, nor for the benefit of the claimant, Rockvog, but for the purpose of restoring jurisdiction to that tribunal, charged by law with its disposition and the adjudication of the rights of all claimants thereto, because, as averred, that tribunal by mistake of fact was deprived of its jurisdiction before final decision. The claimant, Rockvog, is not a party to this suit, is not bound by the decree, and would not be bound by a decision of the contention made by appellant, as above stated, if such decision should be made. Therefore, the sole question for decision here is, was error made in certifying the

land to the state at the time it was certified? And not, is it shown by the facts appellant is entitled to the land.

From the facts stated it is seen the application of Rockvog to enter the land came to the hands of the Commissioner of the General Land Office from the local land office about September 15, 1894, and was there filed, but by mistake or oversight was not entered on the records, and in ignorance of this application the land in dispute was certified to the state; the tract book and other records of that office showing the land free from adverse claim. It is thus conceded by the filing of the application for homestead entry the jurisdiction of the Land Department had been invoked and had attached for the purpose of a hearing and determination of the merits of such application prior to the certification of the land to the state for appellant, which hearing and determination, through mistake of fact, was cut off by the erroneous certification of the land, and that, if such certification is permitted to stand, the claimant, Rockvog, will not only be deprived of any claim to the land, but his right to a hearing and decision of the merits of his application will be lost and destroyed.

In Germania Iron Company v. United States, supra, Mr. Justice Brewer, in drawing a distinction between the case of the United States v. Central Pac. R. Co. (C. C.) 26 Fed. 479, wherein the only parties in interest were the government and the railroad company, and such a case as the one there under consideration, and the one at bar, said:

"Here there are adverse claimants, there are contestants of the patentee's right, and the mere existence of a question of contested fact, the mere fact of a dispute between several parties, is sufficient ground for a court of equity returning the matter for examination to the tribunal which Congress has created for such purposes. This is not a mere matter of procedure between the government and the patentee, but a question of the forum for the adjudication of controversies between individual litigants."

In the opinion it is further said:

"It is true it does not affirmatively appear in this case that the patentee was not entitled equitably to the land, or that the contestants had any superior right thereto; but his rights and their rights depend upon questions of fact, such as priority of application, etc., the determination of which by act of Congress has been committed to the Land Department. It and not a court of equity is the tribunal intrusted by the law with jurisdiction over such matters, and the latter may not inquire what ought to have been the determination of the former, but whether it has been wrongfully deprived of the power to make such determination."

It is claimed by solicitor for appellant the decision in the Germania Iron Company Case is modified by the later case of Duluth & Iron Range Railroad Co. v. Roy, 173 U. S. 587, 19 Sup. Ct. 549, 43 L. Ed. 820. Not so. That was a suit brought by a defeated homestead claimant against the railroad, as patentee from the government, to quiet title, in which suit complainant was, of necessity compelled to show his superior right in equity. To that suit the government was not a party. The act here involved did not control and was not considered. That case has no application here. The Germania Iron Company Case cannot be distinguished from, but is, as was held by the court below, decisive of the rights of the parties to this controversy.

It follows the decree must be affirmed.