UNITED STATES et al. v. NEW ORLEANS PAC. RY. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. October 3, 1916. Rehearing Denied November 4, 1916.)

No. 2871.

1. PUBLIC LANDS ⬦120—CANCELLATION OF PATENTS—LIMITATIONS.

Act March 2, 1896, c. 39, § 1, 29 Stat. 42 (Comp. St. 1913, § 4901), providing that suits by the United States to vacate and annul any patent to lands theretofore erroneously issued under a railroad or wagon road grant shall only be brought within five years from the passage of that act, is applicable to a patent to public land of the United States which was open to sale and conveyance through the land department, though the patent was subject to be declared void on the ground that the land patented was reserved or excluded from the grant under which the patent was erroneously issued.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ⬦120.]

2. PUBLIC LANDS ⬦114(1)—CANCELLATION OF PATENTS—EFFECT OF RUNNING OF LIMITATIONS.

Under Act March 2, 1896, § 1 (Comp. St. 1913, § 4901), requiring suits to vacate patents theretofore issued under railroad or wagon road grants to be brought within five years, the lapse of the prescribed time gives to

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the patent the same effect against the United States that it would have had if it had been valid in the first place.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 314, 316; Dec. Dig. ☞114(1).]

3. PUBLIC LANDS ☞120—CANCELLATION OF PATENTS—LIMITATIONS.

Act Feb. 8, 1887, c. 120, 24 Stat. 391, confirms to a railroad therein named the lands of a railroad grant theretofore made to such railroad's assignor, but provides that all such lands occupied by actual settlers at the date of the definite location of the road and still remaining in their possession or the possession of their heirs or assigns shall be excepted therefrom and be subject to entry under the public land laws. *Held*, that this did not grant lands so occupied to the occupants, their heirs or assigns, or deprive such land of its status as public land subject to entry under the public land laws, and hence Act March 2, 1896, § 1 (Comp. St. 1913, § 4901), applied to a suit to cancel a patent previously issued to the railroad company as erroneously issued.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ☞120.]

4. PUBLIC LANDS ☞120—CANCELLATION OF PATENTS—LIMITATIONS.

Act March 2, 1896, § 1 (Comp. St. 1913, § 4901), in view of its broad general language, is not inapplicable to a suit to cancel a patent erroneously issued prior to its enactment under a railroad or wagon road grant, though the cancellation is intended to inure to the benefit of an occupant of the land or his heirs or assigns, and not to the benefit of the United States.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 332–335; Dec. Dig. ☞120.]

5. PUBLIC LANDS ☞128—TRUSTS—ENFORCEMENT—PARTIES.

If, under the proviso of Act Feb. 8, 1887, § 2 (24 Stat. 391), land thereby confirmed to a railroad and previously patented to it was held in trust for one occupying the land when the act was passed, the resulting cause of action for enforcement of the trust accrued to the occupant, and the government has no interest entitling it to sue for the enforcement thereof; the exercise of no governmental power being required to secure such enforcement.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 344; Dec. Dig. ☞128.]

6. PUBLIC LANDS ☞114(1)—PATENTS—OPERATION—SUBSEQUENT PROCEEDINGS.

The jurisdiction of the land office over public lands having terminated by the issue of a patent, the subsequent pendency of an application of an occupant to make a homestead entry thereof was without effect upon the title which the patent passed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 314, 316; Dec. Dig. ☞114(1).]

7. PUBLIC LANDS ☞131—POSSESSION—CHARACTER—EVIDENCE.

That one in possession of land when it was confirmed to a railroad company by Act Feb. 8, 1887 (24 Stat. 391), subsequently applied to the land office to make a homestead entry thereof, was evidence that his possession was not under a claim of ownership, but only under a claim of prior right to acquire ownership from the government.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 347; Dec. Dig. ☞131.]

8. PUBLIC LANDS ☞131—ABANDONMENT OF RIGHTS.

Where an occupant of land patented and confirmed to a railroad company by Act Feb. 8, 1887, subsequently homesteaded other land, he thereby relinquished his right, if any, to acquire the land patented to the railroad by homestead entry, or to have it held in trust for him, and

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

could convey no rights to another, as he thereby exhausted his privilege of homesteading land.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 347; Dec. Dig. ☞131.]

9. PUBLIC LANDS ☞116—PATENTS—PERSONS ENTITLED TO ATTACK.

An occupant of land patented to a railroad who relinquished his rights therein by homesteading other land, had no color of right to challenge the action of the land department in patenting the land to the railroad.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 323, 325–328; Dec. Dig. ☞116.]

Appeal from the District Court of the United States for the Western District of Louisiana; Aleck Boarman, Judge.

Suit by the United States against the New Orleans Pacific Railway Company and another, in which Newton B. Terrell and another intervened. From a decree in favor of defendants, the complainant and the interveners appeal. Affirmed.

On the 3d day of March, 1885, a patent of the United States which included a specified 160 acres of land in Vernon parish, La., was issued to the New Orleans Pacific Railway Company, which was the assignee of a land grant made by an act of Congress of March 3, 1871, to the New Orleans, Baton Rouge & Vicksburg Railroad Company. 16 Stat. 573, c. 122. On January 10, 1890, the patentee conveyed the land mentioned to Jabez B. Watkins, and the interest of the latter by mesne conveyances has passed to the Gulf Lumber Company, a corporation, to which a deed was made on April 10, 1907, by the Wright-Blodgett Company, then the holder of the claim under the patent. The bill in this case, filed January 21, 1915, in the name of the United States against the New Orleans Pacific Railway Company and the Gulf Lumber Company, averred that prior to and at the time of the filing of the maps showing the definite location of the road of the New Orleans Pacific Railway Company, and at the time of the passage of the act of Congress of February 8, 1887, entitled "An act to declare a forfeiture of lands granted to the New Orleans, Baton Rouge and Vicksburg Railroad Company, to confirm title to certain lands, and for other purposes" (24 Stat. L. 391), the provisions of which act it was averred were accepted, as provided for in the act, by the New Orleans Pacific Railway Company, on April 20, 1887, the land in question was occupied by, and in possession of, Wiley Terrell, who was then and there an actual settler and in all respects qualified to enter public lands of the United States under the homestead laws thereof; that the Gulf Lumber Company had full knowledge and notice of the rights and occupancy of the said actual settler; and that, because of quoted provisions contained in the last-mentioned act of Congress, the inclusion of the 160 acres mentioned in the patent of March 3, 1885, was erroneous. The bill prayed in the alternative: (1) That the patent and the deed to the Gulf Lumber Company be canceled and declared null and void; or (2) that the title held by the Gulf Lumber Company be decreed to be held by it in trust for the said Wiley Terrell, or his heirs or assigns, and to be conveyed to said Wiley Terrell, his heirs or assigns. Each of the defendants filed an answer in which, besides other matters set up as defenses, it was duly pleaded that the claim asserted by the bill was barred by the statute of limitations of March 2, 1896 (29 Stat. L. 42; 2 U. S. Comp. St. 1913, § 4901), and by laches and equitable estoppel. Elijah W. Terrell and Newton B. Terrell filed separate interventions in the suit, each of them claiming that at the time the bill was filed he was in possession of part of the 160 acres described in the patent, was qualified to acquire it by homestead entry, and was entitled to do so as the assignee of one to whom, as the result of successive transfers, the rights of Wiley Terrell had passed. By the decree which is appealed from the bill and the intervening petitions were dismissed, the assailed patent was confirmed as to the 160

acres in question, and the Gulf Lumber Company was quieted in its possession and ownership thereof.

Geo. Whitfield Jack, U. S. Atty., Robert A. Hunter, Asst. U. S. Atty., and J. H. Stephens, Jr., all of Shreveport, La., for appellants.

Mark Norris, of Grand Rapids, Mich., W. H. Thompson, of Winnsboro, La., and Blanchard, Smith & Palmer, of Shreveport, La., for appellee Gulf Lumber Co.

Before PARDEE and WALKER, Circuit Judges, and MAXEY, District Judge.

WALKER, Circuit Judge (after stating the facts as above). For support of the claims asserted by the bill and by the intervening petitions much reliance is placed upon provisions contained in the above-mentioned act of Congress of February 8, 1887, which was enacted, and the provisions of which were formally accepted by the patentee, after the date of the issue of the attacked patent, but before the patentee made the conveyance to Jabez B. Watkins, through whom the appellee Gulf Lumber Company claims title. The tract in question was embraced in the grant and confirmation to the New Orleans Pacific Railroad Company made by section 2 of that act, unless it was excepted by the proviso to that section:

"That all said lands occupied by actual settlers at the date of the definite location of said road and still remaining in their possession or in possession of their heirs or assigns shall be held and deemed excepted from said grant and shall be subject to entry under the public land laws of the United States."

It is contended by the counsel for the appellants that that proviso, and the provision of section 6 of the same act making it applicable to lands excepted from the grant and confirmation which had already been patented before the act was passed, had the effect of giving to land occupied by an actual settler at the date of the definite location of the road, and remaining in his possession or in the possession of his heirs or assigns at the time of the passage of the act, but which had been previously patented and the title to which was held by the patentee at the time it accepted the provisions of the act, the status of erroneously patented lands, which the patentee was obligated to relinquish or reconvey to the United States upon the demand of the Secretary of the Interior, and the patent to which was subject to be canceled in a suit brought for that purpose by the Attorney General pursuant to the authority and command of section 2 of the act of March 3, 1887, entitled "An act to provide for the adjustment of land grants made by Congress to aid in the construction of railroads and for the forfeiture of unearned lands, and for other purposes." 24 Stat. 556, c. 376; 2 U. S. Comp. St. 1913, § 4896. These contentions are combatted by counsel for the appellees upon grounds not now necessary to be stated or considered. It is not material to determine whether the patent was or was not subject to cancellation if, because of a duly pleaded bar caused by lapse of time or otherwise, that relief, though the plaintiff formerly was entitled to it, is not grant-

able in this suit, which was brought nearly thirty years after the patent was issued.

[1-3] The right to a cancellation of the patent is barred by the Act of March 2, 1896 (29 Stat. 42; 2 U. S. Comp. St. 1913, § 4901), unless there is something in the case to make that statute inapplicable to it. That act provides "that suits by the United States to vacate and annul any patent to lands heretofore erroneously issued under a railroad or wagon road grant shall only be brought within five years from the passage of this act," that is to say, from March 2, 1896. The statute is applicable to a patent to public land of the United States which was open to sale and conveyance through the Land Department, though the patent was subject to be declared void on the ground that the land patented was reserved or excluded from the grant under which the patent was erroneously issued; and the lapse of the prescribed time before the institution of the suit to vacate and annul the patent gives to the patent the same effect against the United States that it would have had if it had been valid in the first place. United States v. Chandler-Dunbar Co., 209 U. S. 447, 28 Sup. Ct. 579, 52 L. Ed. 881; United States v. Winona, etc., Railroad, 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789. But it is insisted that the above-quoted proviso to section 2 of the Act of February 8, 1887, had the effect of preventing the land in question, occupied as it was at the date of the definite location of the road and when the act was passed, being considered public land subject to sale and conveyance through the Land Department. To yield to this insistence, we think, would be going in the teeth of the express words of the proviso declaring that lands so occupied "shall be subject to entry under the public land laws of the United States." The proviso had the effect of excluding lands so occupied from the grant and confirmation made by the preceding part of the section, and it may be inferred that the purpose of such exclusion was to afford to the occupants of the lands the opportunity of acquiring them under the public land laws, if they possessed the qualifications and took the steps requisite to entitle them to do so; but nothing in the proviso indicates a purpose to give it the effect of a grant to the occupants, their heirs or assigns, of the lands so occupied, and its explicit language forbids the conclusion that land so occupied or settled upon was thereby deprived of the status of public land subject to entry under the public land laws of the United States, or that the mere fact of occupation gave to the occupant the right of one who had effectively entered the land, rather than of making it merely subject to entry. See Oregon & Cal. R. R. v. United States, 238 U. S. 393, 434, 35 Sup. Ct. 908, 59 L. Ed. 1360.

In this connection, the decision in the case of Northern Pacific Railway Co. v. United States, 227 U. S. 355, 33 Sup. Ct. 368, 57 L. Ed. 544, was called to our attention. There is an obvious distinction between the facts of that case and those of the case at bar. It was held in that case that the limitation which the statute created did not apply to a suit for the cancellation of a patent to land which at and prior to the date of the issue of the patent belonged, not to the United States as a part of its public domain, but to the Yakima Indians, being part

of a reservation made by a treaty with them which was ratified many years before the patent issued. Land to which a tribe of Indians has a perfected right does not belong to the same category as land which by statute is explicitly declared to be "subject to entry under the public land laws of the United States." We are of opinion that at the time of the issue of the patent the land in question was public land of the United States which was open to sale and·conveyance through the Land Department.

[4] Another contention is that the fact that the sought for remedy of a cancellation of the patent was intended to inure to the benefit, not of the United States, but of an occupant of the land in question, or his heirs or assigns, renders the statute inapplicable to this suit. Nothing in the language of the statute gives any color to the claim that any suit brought by the United States to vacate and annul any patent to public land erroneously issued prior to the enactment under a railroad or wagon road grant was intended to be exempt from the bar which the statute created. It is apparent that the enactment evidences a purpose to restrict a vast power theretofore judicially recognized, and decided to have been confided to the Attorney General, resorts to which had not been infrequent, and to control it by a statute of limitations having the effect of avoiding some of the evils that might be expected to result from an abuse of the power by a postponement of its exercise until by lapse of time those claiming under a patent might be deprived of the means, perhaps available at an earlier date, of combating a charge that it was procured by fraud or was erroneously issued. United States v. San Jacinto Tin Co., 125 U. S. 273, 8 Sup. Ct. 850, 31 L. Ed. 747. There had been notable instances of the exercise of this power by the Attorney General for the exclusive benefit of private parties asserting prior claims to the land involved, which the government was under some duty to protect. United States v. Beebe, 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. Ed. 121; United States v. Missouri, K. & T. R. Co., 141 U. S. 358, 12 Sup. Ct. 13, 35 L. Ed. 766; Germania Iron Co. v. United States, 165 U. S. 379, 17 Sup. Ct. 337, 41 L. Ed. 754; United States v. Winona, etc., Railroad, 165 U. S. 463, 17 Sup. Ct. 368, 41 L. Ed. 789. It may be supposed that such instances, as well as those in which the power had been invoked to protect some public interest or title, had effect in bringing the lawmakers to a realization of the propriety of restricting the power by an explicit statute of limitations, applicable specifically to a suit by the United States to vacate and annul a land patent, whether the suit is or is not one in which, because the only interest or right sought· to be protected is that of a private party, some other bar or defense available against such party could successfully be set up. At any rate, we are of opinion that the broad general language of the statute forbids the conclusion that it is inapplicable to such a suit as the one under consideration.

[5] The claims asserted by the bill and by the intervening petitions that the land in question was held by the patentee and those claiming under it subject to a ·trust in favor of Wiley Terrell, his heirs or assigns, involve the recognition of the patent as valid and that it effected

an extinguishment of the title and interest of the government in the land. If a trust in favor of an occupant of the land arose because of the circumstances attending the acquisition of the patent, the resulting cause of action accrued, not to the government, but to the cestui que trust. The exercise of no governmental power was required to secure an enforcement of such a trust. The controversy to which the assertion of such a claim gives rise is one in which the government is not concerned, and in which private parties alone are interested, and the settlement of it properly may be left to personal litigation between them. United States v. Beebe, 127 U. S. 338, 8 Sup. Ct. 1083, 32 L. Ed. 121; Northern Pacific Railway v. Trodick, 221 U. S. 208, 31 Sup. Ct. 607, 55 L. Ed. 704. The conclusion is that the government has nothing to complain of in the decree appealed from, as each of the remedies its bill prayed for in the alternative was properly denied, any right it may have had to one of those remedies being barred by the limitation pleaded, and the other, assuming that it was not also subject to the same bar, being one to which the government was not entitled because of its lack of interest in the claim asserted.

What has been said disposes of the attack upon the decree except as to that part of it which adjudged against the claims asserted by the intervening petitions and quieted the Gulf Lumber Company in its ownership and possession of the lands involved in the suit. That part of the decree might properly be the subject of complaint by the interveners if the effect of it was to deprive them of an interest in the land to which the evidence showed that they were entitled.

[6, 7] The evidence tended to prove that Wiley Terrell lived on the land in question continuously from 1879 until long after the passage of the act of February 8, 1887. If the patentee held the title to that land subject to a trust in favor of Wiley Terrell, that trust became enforceable by the latter certainly not later than April 20, 1887, the date of the acceptance by the patentee of the provisions of the act just mentioned. He did nothing evidencing the assertion of such a claim, but on October 14, 1887, more than two years after the patent to the land had issued, he applied in the local land office to make a homestead entry of the land. That proceeding was pending several years. Its pendency before a tribunal, the jurisdiction of which over the land had terminated by the issue of the patent before the proceeding was instituted (Bicknell v. Comstock, 113 U. S. 149, 5 Sup. Ct. 399, 28 L. Ed. 962; Germania Iron Co. v. United States, 165 U. S. 379, 17 Sup. Ct. 337, 41 L. Ed. 754), was without effect upon the title which the patent passed, but was evidence of the fact that whatever possession Wiley Terrell had was not under a claim of ownership, but only under a claim of a prior right to acquire ownership from the United States. In 1899 he made a homestead entry on a different 160 acres, a patent to which was issued to him. In 1902 or 1903 he made a verbal sale—what the sale was intended to embrace, whether all or a part of the land or only improvements on it, does not clearly appear—to one McCullough, who, before he made this purchase, had homesteaded 160 acres of land elsewhere and obtained a patent therefor. The sale to McCullough was followed

by his going on the land and occupying some of it—the extent of the occupation was not clearly shown—in person or by tenants, until 1909, when he sold his improvements to one Merchant, who never lived on the land, and who sold to one O'Niell, through transfers from whom one of the interveners acquired possession of part of the land, and the other acquired possession of another part of it. They also claim under a quitclaim deed made by their father, Wiley Terrell, after his transfer to McCullough and while the latter was in possession. During all this time the land was uninclosed, most of it being covered by virgin forest, and having not more than two small clearings on it, and was assessed for taxation to the successive holders of the record title, who paid taxes on it, and manifested their claim of ownership by such acts as might be expected of the owner of land mostly covered by virgin timber. It was not made to appear that either of the successive occupants asserted a claim different from the one asserted by Wiley Terrell.

[8, 9] The foregoing recital discloses several obstacles in the way of the maintenance of the claims asserted by and in behalf of the interveners. If the land in the hands of the patentee or its assigns was chargeable with a trust in favor of Wiley Terrell by reason of the fact that he, being an actual settler, had a right, made by statute superior to any possessed by the patentee, to acquire the land from the government, that trust became enforceable not later than April 20, 1887. It seems that the claim, if it was not otherwise extinguished, must have become stale, or rendered unenforceable by laches, as a result of the unexplained delay of more than a quarter of a century in asserting it against the holder of the record title; and that in favor of the present holder of that title, which, presumably influenced by the apparent abandonment of the trust claim evidenced by the nonassertion of it during the immediately preceding 20 years, acquired that title in April, 1907, by paying a valuable consideration therefor, there is an estoppel on the interveners now to assert their claim. Osborne v. Altschul (C. C.) 101 Fed. 739; Holt v. Murphy, 207 U. S. 407, 28 Sup. Ct. 212, 52 L. Ed. 271. But if at any time Wiley Terrell was entitled to acquire the land in question by a homestead entry, he relinquished that right in 1899 by homesteading other land. After he took that step, he was without color of right to challenge the action of the Land Department in patenting the land in question to the New Orleans Pacific Railway Company, or to claim that that land continued to be held in trust for him, or subject to his homestead right to it, and the rights of the patentee and its assigns took precedence of any subsequently arising claim by an occupant of a right to acquire the same land from the government. Love v. Flahive, 205 U. S. 195, 202, 27 Sup. Ct. 486, 51 L. Ed. 768; Moss v. Dowman (C. C.) 82 Fed. 810. The sale to McCullough in 1902 or 1903 did not have the effect of conferring such a right. The assignor did not possess it, as, if he had ever had it, he had lost it by abandoning it, and the assignee was disqualified to acquire it as a result of his having already exhausted his privilege of homesteading land. As the immediate predecessors of the interveners in

the occupancy of the land did not possess the right claimed, their sales to the latter could not confer it on them.    In short, the claims of the interveners are based upon asserted rights which, if they ever existed, had by abandonment ceased to exist years before either of the interveners had any connection with the land in question.    Neither the pleadings nor the evidence in the case furnish any support for a claim that a right to the land has been acquired by an adverse possession of it.    It was not made to appear that the interveners have any right or title to be prejudicially affected by the decree complained of.

As neither of the appellants has a just ground of complaint against that decree, it is affirmed.

MAXEY, District Judge, was prevented by illness from participating in the decision of this case.