**Donald D. CARLO and Edward Carlo, Plaintiffs,**

v.

**George E. M. GUSTAFSON, Alaska Townsite Trustee and James Watt, Secretary of the Interior, U. S. Department of the Interior, and Martha A. Barron, Defendants.**

**Civ. No. F80–17.**

United States District Court, D. Alaska.

April 9, 1981.

James Q. Mery, Alaska Legal Services Corp., Anchorage, Alaska, for plaintiffs.

Stephen Cooper, Asst. U. S. Atty., Rene Gonzalez, U. S. Atty., Fairbanks, Alaska, for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on federal defendants' motion to dismiss, and plaintiff's motion for partial summary judgment. Request for oral argument is denied in order to expedite the business of the court. Local Rule 5(C)(1).

### I. *BACKGROUND*

Through the Act of 3 March 1891, 43 U.S.C. § 732 (1970), Congress opened Alaska to settlement by extending the general land laws to Alaska. The Act granted citizens, usually non-natives, the right to establish townsites in Alaska. Pursuant to the Act, the Secretary of Interior would name a trustee to designate Alaska public lands as townsites. Occupants of a proposed townsite could then petition the trustee to establish the towns exterior boundaries. Following a survey and approval of the petition, the federal government would issue a patent for the townsite land. Thereafter the townsite occupants would usually obtain a subdivisional survey and unrestricted deeds to their individual lots within the subdivision.

Under the 1926 Native Townsite Act, 43 U.S.C. §§ 733 *et seq.* (1970), Congress extended the provisions of the 1891 townsite laws to Alaska Natives. Patenting of lots within Native townsites then became possible. Native townsite residents, however, received restrictive deeds which were inalienable without permission of the townsite trustee.

Pursuant to the Act of 26 February 1948, any Alaskan Native claiming ownership of land issued under the 1926 Act could file a petition for an unrestricted deed. If the applicant had not been issued a restrictive deed, the application had to "contain evidence substantiating the claim and occupancy of the applicant." 43 C.F.R. § 2564.6 (1978).

In the early 1950's Frank Carlo Sr., an Athabascan Indian, bought and occupied a house and lot on federal property in Ruby, Alaska. In 1969 Frank Carlo Sr. died intestate leaving his only heirs plaintiffs Donald and Edward Carlo, defendant Martha Barron, and Victor and Ronald Carlo.

Pursuant to the townsite laws Ruby, Alaska became a federal townsite on 2 April 1976. Natives of Ruby were thereby eligible to receive restricted or unrestricted deeds for lots which they presently occupied.

In August of 1976, defendant Barron applied to the federal trustee for an unrestricted deed to the house and lot formerly occupied by Frank Carlo Sr. (hereinafter lot four). In her application she alleged that she inherited the property from her "folks", had occupied the tract for "25 years", and certified that "there is no one ... claiming an interest in this tract ...."

The officer for the Bureau of Indian Affairs failed to obtain statements of two disinterested witnesses as provided in the application. Accordingly, there was no evidence, other than Martha Barron's word, substantiating her application. Nevertheless, the trustee issued Barron an unrestricted deed to lot four in October of 1976.

Plaintiffs claim they lacked knowledge of the issuance of the deed to their sister until sometime in 1977. Apparently, Donald Carlo protested strenuously when he became aware of the transaction. After assurances from his sister that the property belonged

to the Carlo siblings, Donald Carlo declined to take legal action.

Later Martha Barron entered into a contract for the sale of lot four and the house located thereon. Plaintiffs then brought suit in this court to have the unrestricted deed issued to Martha cancelled.

## II. *FEDERAL DEFENDANTS' MOTION TO DISMISS*

In their motion to dismiss the federal defendants argue that: 1) this court lacks subject matter jurisdiction; 2) the issues are moot and plaintiffs lack standing; 3) plaintiffs have failed to state a claim upon which relief may be granted; and 4) plaintiffs are barred by the doctrine of laches.

### A. *JURISDICTION*

It is well established that the United States cannot be sued without its consent. Plaintiffs rely on 28 U.S.C. § 1353, which is a jurisdictional recodification of 25 U.S.C. § 345, for the necessary consent as well as for jurisdiction. Section 345 grants the necessary consent to sue the United States and grants district courts jurisdiction "to try and determine any action ... involving the right of any person, in whole or in part in Indian blood or descent, to any allotment of land under any law or treaty." 25 U.S.C. § 345 (1976); *see Scholder v. United States,* 428 F.2d 1123, 1126 n. 2 (9th Cir. 1970) ("28 U.S.C. § 1353 is a recodification of the jurisdictional portion of § 345. Judicial attention has centered on § 345 and we follow this practice.").

The Ninth Circuit has made clear that § 345 confers jurisdiction on a district court to compel the issuance of an allotment, as well as to protect "the interests and rights of the Indian in his allotment or patent after he has acquired it." *United States v. Pierce,* 235 F.2d 885, 889 (9th Cir. 1956). Jurisdiction exists here if a lot acquired under the 1926 Native Townsite Act is considered an "allotment."

■ Initially the court notes that "statutes passed for the benefit of dependent Indian tribes and communities are to be liberally construed in favor of the Indians." *Rockbridge v. Lincoln,* 449 F.2d 567, 571 (9th Cir. 1971). The Ninth Circuit has expressed that § 345 protects an Indian's rights "in his allotment or patent...." *Pierce,* 235 F.2d at 889. In dealing with homestead laws for the benefit of Indians, the Supreme Court has reasoned that the term "allotment" should not be narrowly construed. *United States v. Jackson,* 280 U.S. 183, 195, 50 S.Ct. 143, 147, 74 L.Ed. 361 (1930) ("Claims under the various laws relating to Indian homesteads may with equal propriety be characterized as allotments"). In short, when an act of Congress allows Indians the right to secure homes upon the public domain, and also provides certain protections as part of the government's trust responsibility to Indians, jurisdiction to protect an Indian's right to such land lies under § 345.

■ The court finds that the 1926 Native Townsite Act falls within the purview of § 345. The Act was created by Congress solely for the benefit of Alaska Natives. Additionally, the Act made more than land available to the Natives. With the land grants came protections against taxation and restrictions on alienation. Within the Act Congress coupled land grants with federal trust protection. Accordingly, this court has jurisdiction pursuant to § 345 to protect a native's right to his patent.

### B. *MOOTNESS AND STANDING*

■ When the matter contested has been resolved there is no longer a case or controversy and the matter is moot. In a moot situation "there is no subject matter on which the judgment of the court's order can operate." *Ex parte Baez,* 117 U.S. 378, 390, 20 S.Ct. 673, 677, 44 L.Ed.2d 813 (1900). Here the court is reviewing whether plaintiffs have been, through a breach of trust, deprived of townsite property rightfully belonging to them. This matter has not been resolved. Additionally, since a deed if fraudulently procured may be cancelled by a court of equity, *Germania v. United States,* 165 U.S. 379, 385, 17 S.Ct. 337, 339, 41 L.Ed. 754 (1897), there is subject matter

which the courts judgment may operate. This cause is not moot.

■ The standing doctrine demands, pursuant to the case and controversy limitation of Article III, that a plaintiff demonstrate that he has been injured in fact. The Supreme Court has established that a plaintiff seeking a federal forum must show a direct personal interest in the action he seeks to litigate. *Association of Data Processing Organizations v. Camp*, 397 U.S. 150, 151–52, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). Here plaintiffs allege that property in which they have a legal interest has been deeded to another through invalid agency action. This is clearly an allegation of injury in fact demonstrating a direct personal interest in the action. Moreover, § 345 expressly confers standing to Indians who claim they have been denied a parcel of land to which they are entitled under an Act of Congress. Plaintiffs have standing to sue.

## C. *THE COMPLAINT*

■ In their complaint plaintiffs allege that their father acquired equitable title to lot four through maintenance and occupancy. This title descended to Frank Carlo, Sr.'s heirs upon his death. *Cf. Stringfellow v. Cain*, 99 U.S. 610, 616, 25 L.Ed. 421 (1878) (adverse possession right descendable). Further, plaintiffs allege that they were entitled to occupy lot four at the time of the final subdivisional survey as they resided upon or exercised control over the lot from the death of their father to present. If true, this allegation would mean equitable title lies with plaintiffs. Finally, plaintiffs allege that their property was invalidly conveyed due to a government breach of trust. Plaintiffs clearly allege a claim upon which relief may be granted.

## D. *LACHES*

■ The doctrine of laches bars an equitable remedy when a plaintiff has neglected to assert a right after a considerable lapse of time, and plaintiff's omission has prejudiced the adverse party. 2 Pomeroy's Equity Jurisprudence § 419 (1941).

What constitutes an unreasonable amount of time must be determined from the circumstances of each case. *Burnett v. New York Central R. Co.*, 380 U.S. 424, 435, 85 S.Ct. 1050, 1058, 13 L.Ed.2d 941 (1965). Time delay alone is insufficient to invoke the doctrine as it is "principally a question of the inequity of permitting a claim to be enforced." 2 Pomeroy at § 419d.

■ Plaintiffs contend that defendant Martha Barron falsely assured them that their interests in lot four would remain unchanged. Plaintiffs maintain that they sought judicial relief when this assurance was shown to be untrue. Thus, the delay was principally due to Martha's alleged false assurance, rather than plaintiff's neglect. Moreover, the federal defendants have failed to show prejudicial delay. Accordingly, the doctrine of laches is inapplicable in this cause.

## III. *PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT*

In their motion for partial summary judgment, the plaintiffs argue that as a matter of law: 1) the 1926 Native Townsite Act creates a special trust relationship between the United States as guardian and Natives entitled to occupy township property as wards; 2) this duty is separate from that owed non-Natives under the townsite laws; 3) the federal defendants owed plaintiffs as wards a statutory duty to protect their right to occupancy; and 4) the federal defendants have breached their statutory duty owed plaintiffs.

## A. *THE NATURE OF THE GOVERNMENT'S DUTY*

As discussed above, the 1926 Native Townsite Act extended the provisions of the 1891 townsite laws to Alaska Natives. Under the 1926 Act, however, Alaska Natives were treated somewhat differently than their non-Native counterparts. Alaska Natives were issued deeds which restricted their ability to convey the property, and the property was protected from taxation, execution on a debt or contract, liabilities of

the patentee, and claims of adverse possession. 43 U.S.C. § 733 (1970). Full title was conveyed, but it was a full title with restrictions.

As full title was conveyed under the 1926 Act, a trust responsibility in the traditional sense of the term did not exist—the Native acquired legal and equitable title. This does not mean, however, that the Federal Government cannot have binding obligations to the Alaska Native townsite owners. One commentator has noted:

> [T]he statutory limitations on alienability, and the regulations implementing the statute, seem to constitute a "course of dealing" which compels the owner of an inalienable townsite to rely on the Federal Government for protection and advice. If this is not a "trust" relationship in the strict property ownership sense of the term, it is a close enough approximation to impose "fiduciary" obligations on the Federal Government—particularly the BIA. Native reliance on the relationship, coupled with the "overriding duty of fairness" when dealing with the Natives also compel this conclusion. (citation omitted)

D. Case, The Special Relationship of Alaska Natives To The Federal Government 63 (The Alaska Native Foundation 1978).

It has been established that the trust doctrine is not limited to situations in which the government has retained legal title to Indian land. Cf. Morton v. Ruiz, 415 U.S. 199, 236, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974) (trust obligation applied to require stricter administrative standards in management of off-reservation gratuity). Indeed, the Supreme Court has asserted that the government's "conduct as disclosed in the acts of those who represent it in dealings with Indians, should . . . be judged by the most exacting fiduciary standards." Seminole Nation v. United States, 316 U.S. 286, 297, 62 S.Ct. 1049, 1054, 86 L.Ed. 1480 (1942). In essence, case law makes clear that when Congress provides specific legislation for the benefit of Indians, government officials are held to strict fiduciary standards in implementing that legislation.

The court finds that the 1926 Native Townsite Act was enacted for the benefit of Alaska Natives. Accordingly, government officials implementing the Act are to be held to strict fiduciary standards. Further, the duties owed Native Alaskans under the Act are separate from any duties owed to non-Natives entitled to unrestricted deeds under the Townsite Act of 1898. As a matter of law the 1926 Native Townsite Act created a separate relationship between the United States as guardian, and Indians within the purview of the Act as wards.

### B. DUTY OWED AND BREACH

The court finds that questions of fact exist in regard to the plaintiffs' use and occupancy claim. Until plaintiffs' claim of use and occupancy is substantiated, the court cannot rule as a matter of law that the federal defendants owed them a duty to protect their occupancy. It follows, therefore, that the question of whether the federal defendants breached a duty owed plaintiffs is premature.

Accordingly, IT IS ORDERED:

1) THAT the federal defendants' motion to dismiss is denied.

2) THAT plaintiffs' motion for partial summary judgment is granted on the issue of a separate trust responsibility owed Alaska Natives under the 1926 Native Townsite Act, but denied on the issue of duties owed plaintiffs and breach of any duties owed plaintiffs.